# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WILLIAM D. EVERETT, )<br>)<br>Defendant. ) | Case No. 14-06007-01-CR-W-SRB |

## DEFENDANT'S SENTENCING MEMORANDUM
## AND REQUEST FOR DOWNWARD VARIANCE

COMES NOW the defendant, William D. Everett, by counsel, Travis D. Poindexter, Asst. Federal Defender, in accordance with Rule 32, Fed. R. Crim. P., and hereby submits the following Sentencing Memorandum and Request for Downward Variance from the advisory sentencing guidelines. Mr. Everett submits that application of the advisory sentencing guidelines in this case would lead to an unreasonable sentence and that the mandatory minimum of 5 years imprisonment is more than sufficient to satisfy the statutory goals of sentencing as directed by 18 U.S.C. § 3553(a).

## GENERAL SENTENCING AUTHORITY

A District Court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *United States v. Feemster*, 572 F.3d 455, 460-461 (8th Cir.2009)(citing *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 596 (2007)). After

the Court affords both parties an opportunity to argue for whatever sentence they deem appropriate, it should then consider all of the 18 U.S.C. § 3553(a) factors to determine whether they support the sentence requested by a party. *Id*. at 461.

In imposing any sentence 18 U.S.C. § 3553 generally directs that the Court shall impose a sentence sufficient, but not greater than necessary. Among the factors for the Court to consider are the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford an adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. (See 18 U.S.C. § 3553(a)).

The advisory sentencing guidelines are an additional factor for the Court to consider but a district court may not begin with the presumption that those guidelines are reasonable. *United States v. Alvizo-Trujillo*, 521 F.3d 1015, 1018-1019 (8th Cir.2008)(citing *United States v. Gall*, 128 S.Ct. 586, 596-597 (2007) and *United States v. Rita*, 127 S.Ct. 2456 (2007)).

## **SPECIFIC AUTHORITY RELATED TO GUIDELINES IN THIS CASE**

The sentencing guidelines, as set out in the Presentence Investigation Report (PSR), recommend an advisory sentencing range of 97 to 121 months of imprisonment. This calculation is the result of guideline enhancements that are nearly universally applied in

every receipt, distribution and/or possession offense that involves child pornography. As a result of this reality, many courts have now noted that these guidelines (in this case, § 2G2.2) are of little or no practical value in determining culpability and are of little use in distinguishing between offenders. *See United States v. Marshall*, 870 F.Supp. 2d 489 (N.D. Ohio 2012); *United States v. Burns*, 2009 WL 3617448 (N.D.Ill) at *7).

The criticisms to § 2G2.2 have also been noted by the Eighth Circuit Court of Appeals. In *United States v. VandeBrake*, 679 F.3d 1030 (8th Cir.2012), the Court noted that district judges must enjoy the same liberty to depart from the child pornography guidelines based on reasonable policy disagreements as they do from crack-cocaine guidelines discussed in *Kimbrough* because, "[m]ost of the revisions [to § 2G2.2] were Congressionally-mandated and not the result of any empirical study." *Id*. at 1038 (quoting *United States v. Henderson*, 649 F.3d 955, 960, 962 (9th Cir.2011)).

Likewise, in *United States v. Buesing*, 615 F.3d 971 (8th Cir.2010), the Court reviewed a downward variance from this particular guideline to a mandatory minimum sentence. In affirming the downward variance, the court highlighted that:

> After considering the § 3553(a) factors, the district court found "the Guidelines sentencing system inadequately addresses [Buesing's] circumstances." In rejecting U.S.S.G. § 2G2.2 for policy considerations, *see Kimbrough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), the district court observed U.S.S.G. § 2G2.2 had received "legitimate criticism" in recent years because the various special offenses characteristics thereunder "quickly . . . ratchet[] up" a first-time offender's Guidelines range to the statutory maximum. The district court concluded the Guidelines thereby fail "to differentiate between gradi[ents] of [§ 2252(a)], which there certainly must be.

The district court "weigh[ed] heavily" § 3553(a)(6), the need to avoid unwarranted sentencing disparity among similarly situated defendants. The district court examined the United States Sentencing Commission's statistics regarding U.S.S.G. § 2G2.2 and found "the high volume of downward variances [is] strong testimony to the fact that the Guidelines cannot be routinely applied in a fair way when it comes to this particular crime." *Id*. at 974.

Mr. Everett finds himself in a similar scenario that has been recognized by these courts. Although the statutory range of punishment for Counts 1 and 2 (attempted receipt) is between 5 years and 20 years of imprisonment and between zero and 10 years for Count 3 (simple possession), he is facing a vastly higher sentence under the guidelines for what would arguably be relatively basic violations.

## **SUGGESTIONS IN SUPPORT OF DOWNWARD VARIANCE**

### **History and Characteristics of Mr. Everett**

Mr. Everett is 45 years old and has no criminal history as a juvenile or adult. (PSR at ¶'s 32-33). Additionally, he has no history of arrests or any other criminal conduct. (PSR at ¶'s 36-38). This offense constitutes his first negative contact with the law or the criminal justice system and Mr. Everett had never spent a day in jail prior to his self-surrender on this offense.

Mr. Everett grew up in Cameron, Missouri, a town of approximately, 10,000 people. He was the middle sibling of three children born to his parents and has always maintained a very close relationship with his family. He graduated high school in 1989 and later

became a licensed forklift operator.

In 1991, at the age of 21, he put his personal aspirations aside for nearly a decade in order to be the primary caregiver for his ailing grandparents. He moved into their home and assisted in their day-to-day living until they passed away in 1998 and 1999 respectively. (PSR at ¶ 39).

Thereafter, in 1999, he obtained employment at Diversified Metal Fabricators located in Smithville, Missouri. (PSR at ¶ 45). Mr. Everett was a dedicated and devout full-time employee of the company while learning virtually all aspects of metal fabrication. He worked continuously at this job for over 15 years until his current incarceration. His employer noted that:

> Over the 16 years that I have employed and known William (Bill) Everett I never experienced any personnel issues with him. He was renowned for his positive attitude, friendly manner, and dedication to his work. Bill was always on time, ready to work, and eager to help his co-workers.
>
> Bill is not only eligible to return to work for our company, but we look forward to his return. We have been able to rely on him for so long that we notice his absence and look forward to his eventual return. His assistance in training new personnel and his expertise in his tasks have been assets to our company.
>
> I believe beyond a doubt that when given the opportunity, Bill will return to being a positive member of our society and a valued member of the DMF family.

*See* Attachment 1 at page 1.

Mr. Everett was also a sincere and self-less member of his community who

5

always assisted others when the need arose. As recounted by one of his neighbors of 9 years:

> Bill visited many times in my home and did small tasks for me and I must say I found no fault in his behavior. Several times each year, Bill collected my mail and newspaper for me while I was away from home for extended periods of time.
>
> Bill often mowed my grass just because it needed to be done, without my asking and would not take payment for doing it. He also shoveled snow from my drive of his own volition and again without payment. I appreciate Bills' kindness to me all the years that I lived in Gower. He was never disrespectful to me in any way nor gave me any reason to think him anything other than an exemplary neighbor.

*See* Attachment 1 at p. 2-3.

Mr. Everett also maintained a special and close relationship with his father who is now 72 years old. In a letter to the Court, his father, notes that, "Bill has always been a very peaceful person, very caring. In growing up he was well liked by other kids in the neighborhood, and was always the peacemaker when there was a misunderstanding amongst his friends." Lifelong football fans, Mr. Everett and his father held season tickets to University of Missouri Football and every Saturday, they made the 300 mile round trip from Cameron to Columbia for nearly two decades. His father recounts that, "The three things in Bill's life that mean the most to him are, his family, his music and The Missouri Tigers Football Program." (*See* Attachment 1 at p. 4-5).

Although he had never spent a day in jail, Mr. Everett recognized the severity of the offenses and the significant minimum punishment established by the law. He appeared

before the Court, accepted responsibility for his offenses and surrendered himself for service of his sentence. These actions clearly demonstrate that Mr. Everett understands the full extent of his obligations to this Court and that he can comply with the Courts' directives while under supervision.

**Nature & Circumstances of this Offense**

The underlying offenses in this case occurred from 2011 to 2012. (PSR at ¶ 1). From the investigation conducted, there was nothing remarkable about his conduct. When investigators executed a search warrant at his residence Mr. Everett was present and fully cooperative with authorities. Mr. Everett took full responsibility for all of the child pornography.

Over two years passed between the search and indictment filed in this District in May of 2014. At no point did Mr. Everett attempt to flee or avoid responsibility for his offense and he remained at his home in Gower, Missouri. On May 23, 2014, he was placed on bond which included electronic location monitoring. He continued to work and complied with all conditions of his pre-trial release and incurred no violations for 1 ½ years while under supervision. (PSR at ¶ 2).

**Seriousness of the Offense, Promote Respect for the Law, Deterrence**

The offenses to which Mr. Everett pleaded guilty are serious by virtue of the

punishments proscribed, including the mandatory minimum sentence of 5 years imprisonment. To anyone who might consider engaging in activity similar to Mr. Everett, this punishment would serve as a strong deterrent which, in turn, promotes respect for the law.

Regarding Mr. Everett specifically, a 5 year sentence would not only be a sentence no greater than necessary, but a solid deterrent to dissuade any future unlawful conduct. Additionally, Mr. Everett will be required to serve a minimum period of 5 years of supervised release as part of his sentence. During that period of time, Mr. Everett will be required to abide by all conditions set by the U.S. Probation Office and the Court. Thus, even with a 5 year prison sentence and 5 years of supervised release, Mr. Everett will be under the supervision of the Federal Criminal Justice system for at least the next 10 years.

The combined period of incarceration and mandatory supervision clearly reflects the seriousness of the offense in this case.

**Protect the Public**

As previously outlined, the underlying offense in this case was 3 to 4 years ago. From the time of the initial investigation until his surrender into custody at the time of his plea, Mr. Everett has had no other criminal contacts. He remained in the community while under investigation and not formally charged without incident. Additionally, after being formally charged, he was on pretrial supervision of this Court for 18 months successfully.

As noted above, Mr. Everett is currently 45 years old. Even with a minimum sentence of 5 years, he would be on supervision to the Court into his mid to 50's. The Sentencing Commission has conducted independent studies regarding recidivism. As to age and the likelihood of reoffending, the commission concluded:

> Recidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivate . . . Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent.

*Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, United States Sentencing Commission (May 2004) at page 12.[1]

In this case, Mr. Everett's conduct over the past several years has demonstrated that he is not and has not been any threat to the public or risk to reoffend. While independent research confirms that his likelihood of reoffending is substantially diminished, his actions have already demonstrated to the Court this reality. In this case, Mr. Everett's conduct has demonstrated that he is not a threat to the public.

---

[1] The complete study can be found at: http://www.ussc.gov/research-and-publications/research-publications/2004/measuring-recidivism-criminal-history-computation-federal-sentencing-guidelines.

**CONCLUSION**

A review of Mr. Everett's case in light of the sentencing factors enumerated in 18 U.S.C. § 3553 demonstrates that the mandatory minimum sentence of 5 years imprisonment is more than sufficient. Such a sentence also reasonably complies with the directives of a sentence no greater than necessary and is well within the Courts discretion.

Respectfully submitted,

 */s/ Travis D. Poindexter*
TRAVIS D. POINDEXTER
Assistant Federal Public Defender
818 Grand Avenue, Suite 300
Kansas City, Missouri 64106
(816) 471-8282
COUNSEL FOR DEFENDANT


**CERTIFICATE OF SERVICE**

It is hereby certified that the foregoing motion was electronically filed and delivered on the ECF system this 19th day of May, 2016.

 */s/ Travis D. Poindexter*
TRAVIS D. POINDEXTER